# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

CITY OF NORFOLK V. PERRY COMPANY & ANOTHER.

March 12, 1908.

1. LANDLORD AND TENANT—*Perpetual · Lease—Taxes.*—As a general rule the landlord under an ordinary lease is responsible for the taxes on the property leased, but this. rule has no application to the case of a· perpetual leaseholder who is in effect the virtual owner of the property and entitled to its use forever. In such a case the burden of taxation is placed upon the lessee.

2. LANDLORD AND TENANT—*Perpetual Lease—City as Landlord—Covenant to pay "Public Taxes"—Tax by City.*—Where a municipal corporation makes a perpetual lease of a part of its land, and the lessee covenants that he, his executors, administrators and assigns will pay or cause to be paid to the proper person the public taxes which shall become due on said land, the term "public taxes" covers not only the taxes imposed at the time of the lease, but all taxes arising in the future that may be assessed by any lawful authority, including said municipality.

3. TAXATION—*Non-User of Power—Forfeiture.*—Mere non-user by a government of its power to levy a tax, no matter how long continued, can never be construed into a forfeiture of the power.

4. TAXATION—*Uniformity—Failure to Tax Formerly.*—The mandate of the constitution is that all property shall be taxed, save that exempt by constitutional authority, and that all taxes, whether State, local or municipal, shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. That this mandate has been disregarded in the past ·is no reason why it should continue to be disobeyed.

5. LANDLORD AND TENANT—*Perpetual Lease—City as Landlord—City Tax on Leasehold.*—A city having a general power of taxation, though the holder of the mere legal title to land of which it has made a perpetual lease, may levy taxes on the leasehold estate to be paid by the lessee, as he is the virtual owner of the land.

6. TAXATION—*Perpetual Leasehold—Separate Tax on Land and Buildings —Harmless Error—Correction.*—Where there has been a perpetual lease of land, and the land is assessed for taxation in the name of the lessor, and the buildings thereon in the name of the lessee (both

at the same rate, and charged to the lessee) when both should have been assessed together in the name of the lessor, it is at best harmless error; but if the joint assessment would be of advantage to the lessee and he has the right to have it so assessed, his remedy at law, by motion, is adequate to have the assessment corrected in that particular.

Appeal from a decree of the Circuit Court of the city of Norfolk. Decree for the complainants. Defendant appeals.

*Reversed.*

The opinion states the case.

*James F. Duncan* and *Nathaniel T. Green,* for the appellant.

*W. L. Williams* and *Tazwell Taylor,* for the appellees.

Harrison, J., delivered the opinion of the court.

In the year 1792, the appellant, then the borough of Norfolk, was the owner of an area of land within the limits of the present city of Norfolk. In that year it laid off this land into lots and leased the same to various individuals for ninety-nine years, renewable forever. Among these leases was one executed in June, 1797, by which there was leased to one Richard Evers Lee, lot No. 10, at an annual rental of six pounds and fifteen shillings, or $22.50 in United States money, the lessee, as a further consideration, covenanting for himself, his executors and assigns, to "pay or cause to be paid to the person or persons authorized to receive the same the public taxes which shall become due on said land." This lease was for a term of ninety-nine years, renewable for a further term of ninety-nine years, and so on forever.

In May, 1895, before the expiration of the original lease, the city of Norfolk, in accordance with its terms, executed a renewal thereof to the executors of Caroline F. Hare, she having been in her lifetime the owner of all the rights of the original lessee. This renewal lease contained the same terms as the original lease.

By successive assignments, the property covered by this lease has passed to and become vested in the appellees, J. W. Perry Co. and John F. Roper, who have improved the same by the erection of valuable buildings thereon.

This property has been assessed for taxation by the State and such taxes have been regularly paid without protest. In the year 1906 the land was assessed for taxation at $21,000, and the buildings thereon at $6,500. The land was assessed for that year, in the name of the city of Norfolk, and the buildings thereon in the name of the appellee, J. W. Perry Co.

In the year 1906, the city of Norfolk imposed a tax of $346.50 on the land, and a tax of $107.25 on the buildings. Thereupon the appellees filed this bill for an injunction against the collection of these taxes by the city of Norfolk, upon the ground that they were illegal and in contravention of the contract, under which they claim. A temporary injunction was awarded, which was followed by the decree appealed from perpetually enjoining the city of Norfolk, its agents, etc., from the collection of the taxes complained of.

While technically the relation of landlord and tenant exists between the city of Norfolk and the appellees under the terms of the contract of June, 1797, to which we have adverted, it is manifest that the appellees are the substantial and real owners of the property upon which the tax, in question, is assessed. They have the right of possession, use and occupation forever, upon payment of the stipulated rent of $22.50 *per annum,* and they can assign or devise the same, and their heirs will take in case there is no assignee or devisee. In all essential respects, so far as liability for taxes is concerned, appellees are in the position, with respect to this property that the ordinary fee simple owner would be. It is true that, as a general rule, in the absence of a covenant the landlord under an ordinary lease is responsible for taxes on the property leased by him; but this general rule can have no application to the case of a perpetual leaseholder, where the tenant is in effect the virtual owner of

the property and entitled to its use forever. In such a case, certainly for the purposes of taxation, the mere legal title remaining in the landlord will be disregarded and the burden of taxation placed where it belongs, upon the lessee to whom the value and the benefit belongs.

As said by Mr. Justice Bleckley, in a similar case which is quoted with approval by the supreme court: "The value of property consists in its use, and he who owns the use forever, though it be on condition subsequent, is the true owner of the property for the time being. This holds equally of a city lot or of all land in the world. Where taxation is *ad valorem,* values are the ultimate objects of taxation, and they to whom the values belong should pay the taxes." *Wells* v. *Savannah,* 181 U. S. 531, 544, 45 L. Ed. 986, 21 Sup. Ct. 697.

Looking to the official action of the governing body of the borough of Norfolk, in its ordinances or resolutions, providing for these perpetual leases, which are recited in the lease contract under consideration, and to the terms of the contract itself, we fail to find any reference to the matter of exempting this property from taxation. Instead of such a stipulation, there is in the deed of lease made by the borough to the several lessees a clause directly negativing the idea that it was intended to grant a perpetual exemption of this property from the burden of taxation, borne in common by all other property holders. This clause obligates the lessee, "his executors, administrators and assigns to pay or cause to be paid to the person or persons authorized to receive the same the public taxes which shall become due on said land."

The appellees insist that the term, "public taxes," employed by the parties in this covenant, had reference only to State taxes, and was not intended to include the city taxes now sought to be collected, because at that time a municipal tax on land was unknown  It might be argued with equal force that it could not have been contemplated by the parties, at that early day, that the property, now worth thousands of dollars, in a large and

rapidly growing city, should bear no part of the common burden necessary to secure the innumerable advantages and benefits enjoyed by all the citizens of a well regulated, modern municipality. The word "public," as applied to taxes in this covenant, is broad enough to embrace the taxes then imposed or which might thereafter be lawfully imposed upon other land owners in that community. The word has no such fixed or settled meaning as necessarily to exclude city taxes from the term "public taxes." The word public is used variously, depending for its meaning upon the subjects to which it is applied.

In *Buffalo City Cemtery* v. *City of Buffalo,* 46 N. Y. 506, 510, the court says: "We think that the current of the authorities in this State and in some of our sister States runs to this result: that public taxes, rates and assessments are those which are levied and taken out of the property of the person assessed for some public or general use or purpose, in which he has no direct, immediate or peculiar interest; being exactions from him toward the expenses of carrying on the government, either directly and in general that of the whole Commonwealth, or more immediately and particularly through the intervention of municipal corporations."

We are of opinion that the covenant, in the case at bar, by the lessee, to pay all "public taxes" which shall become due on the land, not only covered taxes imposed at the time of the lease, but all taxes arising in the future that might be assessed by any lawful authority.

The appellees insist that the interpretation of the contract of lease suggested by them is evidenced by the conduct of the municipal authorities in failing to tax the property in the past. Mere non-user by a government of its power to levy a tax, it matters not for how long continued, can never be construed into a forfeiture of the power. Whatever the practice of the city hitherto may have been, the mandate of the Constitution is, that all property shall be taxed save that exempt by constitutional authority; and that all taxes, whether State, local or

municipal, shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. Const. 1902, secs. 168, 183. That this mandate may have been heretofore disregarded is no reason why it should be disobeyed now. *Wells v. Savannah, supra.*

Based upon the contention that the property here involved belongs to the city, as lessor, it is insisted by the appellees that the city of Norfolk has no power to tax its own property. Ordinarily the State does not tax its own property, but it has the power to tax it if it sees fit to do so. Cooley on Taxation (3rd ed.) p. 263. And this would be true also of a city having general powers of taxation, as the city of Norfolk has. *Norfolk* v. *Norfolk Landmark,* 95 Va. 564, 28 S. E. 959.

The reason governments of a State or city do not tax their own property is that it would render necessary new taxes to meet the demands of such a tax, and thus the public would be taxing itself in order to raise money to pay over to itself, and no one would be benefited but the officers employed, whose compensation would go to increase the useless levy. Cooley on Taxation, *supra.*

If, however, it were true that a city could not tax its own property, the rule would not apply in this case, for the reason that here, as already seen, the city is practically the holder of the mere legal title, while the appellees are the substantial and beneficial owners. Here the collection of the taxes would not be a vain thing, because the city does not pay the taxes, but they are paid by the lessee of the perpetual leasehold estate, who is the virtual owner, and the city gets the benefit of such taxes in common with all other taxes collected by it.

It is further contended by the appellees that the buildings put upon the land by the lessees can not be assessed separately in their names, but that the land and buildings should be assessed together in the name of the lessor.

If it were conceded that the mode of assessment adopted was wrong, and that suggested by the appellees proper, it would be harmless error. The city had, under the law, to tax the prop-

erty at the same rate that was imposed upon other real estate within its territorial jurisdiction, based upon its valuation in assessing for purposes of State taxation. It is not claimed that the taxes would be less if the mode of assessment suggested by the appellees was adopted, nor is it perceived that the mode of assessment objected to has in any way affected or prejudiced their rights. If having both the land and the buildings assessed in the name of the lessor, be of advantage to the appellees, and they have the right to have them so assessed, their remedy at law, by motion, is adequate to have the assessment corrected in that particular.

For these reasons, we are of opinion, that no right of the appellees, under their lease contract, has been violated by the tax imposed by the city of Norfolk, and, therefore, the decree appealed from, enjoining the collection of such tax, is erroneous and must be reversed. And this court proceeding to enter such decree as the circuit court should have entered, it is ordered that the temporary injunction granted herein be dissolved, and that the complainants' bill be dismissed.

*Reversed.*