[L. A. No. 20696. In Bank. Feb. 28, 1950.]

Estate of CHARLES GOLDEN WILLIS, Deceased. THOMAS H. KUCHEL, as State Controller, Appellant, v. BERTRAM PAUL WILLIS, as Executor, etc., Respondent.

James W. Hickey, Chief Inheritance Tax Attorney, Morton L. Barker, Raymond G. LaNoue, Deputy Inheritance Tax Attorneys, and Joseph D. Lear, Assistant Inheritance Tax Attorney, for Appellant.

Arnold Praeger, Don M. Kitzmiller and Laura O. Coffield for Respondent.

EDMONDS, J.—The appeal of the Controller of the State of California from an order granting a refund of inheritance tax is based upon an agreed statement of facts and presents for decision only a question of statutory interpretation.

Bertram Paul Willis was bequeathed 691 shares of common stock of C. G. Willis and Sons. The inheritance tax appraiser fixed the value of the stock according to a balance sheet submitted by the corporation showing its assets and liabilities as of the date of testator's death and Willis paid the tax found to be due upon the property bequeathed to him.

A few months later, the Commissioner of Internal Revenue levied against C. G. Willis and Sons a deficiency income tax for previous years and it was paid. It is agreed that if this had been determined at, or prior to, the time the inheritance tax appraiser made his appraisal, he would have taken such deficiency into consideration in determining the value of the stock and the inheritance tax due from Willis would have been $1,335.22 less than the amount which he paid.

Upon learning these facts, Willis filed a petition for a refund of the amount of the asserted overpayment. The petition was granted and the appeal is from that order.

Section 14401 of the Revenue and Taxation Code provides: "If any tax has been paid to the county treasurer on a transfer subject to a contingent incumbrance or any contingency which might burden, abridge, defeat, or diminish the estate or interest of the transferee, and the gift was valued without allowance for the incumbrance or contingency, upon the taking effect of the incumbrance or the happening of the contingency the person who paid the tax is entitled to a refund. . . ." The Controller contends that this section is inapplicable to the facts of the present case because the taxable transfer of the shares of stock was of the entire interest of the testator and there was no contingency or contingent incumbrance restricting the legatee's full enjoyment and ownership of such shares. Willis argues that the income tax assessment was an unknown contingency which necessarily affected the intrinsic value of the shares and that the equitable basis of the code section authorizes a refund to correct the valuation of the stock.

Section 14401 is based upon a statute enacted in 1893 (Stats. 1893, ch. 168, § 2, p. 193), which provided: "When any grant, gift, legacy, or succession upon which a tax is imposed . . . shall be an estate, income, or interest for a term of years, or for life, or determinable upon any future or con-

tingent event, or shall be a remainder, reversion, or other expectancy, real or personal, the entire property or fund by which such estate, income, or interest is supported . . . shall be appraised . . . at what was the market value thereof . . . *provided,* that the person or persons . . . beneficially interested . . . may elect not to pay the same until they shall come into the actual possession or enjoyment of such property [in the event a bond is posted].'' Obviously, this section was designed to regulate the taxation of presently enjoyed interests and contingent remainders or future estates. If the interest subject to a tax was determinable by a contingent event, the assessee might withhold payment of it until that event occurred.

The same language was carried into the amendment of the section made in 1895 (Stats. 1895, ch. 28, § 1, p. 33). Each of these statutes was entitled ''An act to . . . establish a tax on collateral inheritances, bequests, and devises.'' Considering the purpose and scope of the legislation, unquestionably the term ''collateral'' was used to call attention to the fact that it applied to present and future estates including, in the latter category, a contingent interest.

The quoted language was retained by the Legislature in 1905 (Stats. 1905, ch. 314, §§ 5, 27, pp. 343, 350), and again in 1911 (Stats. 1911, ch. 395, §§ 5, 28, pp. 716, 727.) In each of these years the statute was reenacted. The 1911 version of it (*supra,* at p. 720 et seq.) reads: ''In estimating the value of any estate or interest in property, to the beneficial enjoyment or possession whereof there are persons . . . presently entitled thereto, no allowance shall be made on account of any contingent incumbrance thereon, nor on account of any contingency upon the happening of which the estate or property or some part thereof or interest therein might be abridged, defeated or diminished; *provided, however,* that in the event of such incumbrance taking effect *as an actual burden* upon the interest of the beneficiary, or in the event of the abridgement, defeat or diminution of said estate or property or interest . . . a return shall be made to the person properly entitled thereto of a proportionate amount of such tax . . . or so much as will reduce the same to the amount which would have been assessed on account of the actual duration or extent of the estate or interest enjoyed. . . . [When] the rights, interest or estates of the transferees are dependent upon contingencies or conditions whereby they may be wholly or in part created, defeated, extended or abridged, a tax shall be

imposed upon said transfer at the highest rate which, on the happening of any of the said contingencies or conditions, would be possible . . ."

It is manifest that the Legislature, in using the word "contingencies," was referring to a contingent interest in property which might affect ". . . the actual duration or extent of the estate of interest enjoyed . . ." by the one presently having possession or enjoyment. The word was used in its technical meaning, and described something by which rights, interests or estates might be ". . . created, defeated, extended or abridged," as in the case of a contingent remainder.

When the act was repealed and reenacted in 1913 (Stats. 1913, ch. 595, §§ 9, 26, pp. 1071, 1083) the provisions last quoted were left intact. Once again, the Legislature provided, in effect, that one presently enjoying an estate would not be permitted a tax allowance because of the existence of a contingent interest in another, but that in the event the contingency occurred and effected ". . . the abridgement, defeat or diminution of said estate or property or interest . . .," the taxpayer would receive a proportionate return of the tax paid upon the market value of the whole estate.

A 1915 amendment (Stats. 1915, ch. 198, § 2, p. 436) retained the same language as did reenactments made in 1917 (Stats. 1917, ch. 589, §§ 8, 25, pp. 887, 901); in 1921 (Stats. 1921, ch. 821, §§ 8, 25, pp. 1507, 1522); in 1927 (Stats. 1927, ch. 646, § 4, p. 1097); in 1929 (Stats. 1929, ch. 844, § 9½, p. 1842) and in 1935 (Stats. 1935, ch. 358, §§ 8, 25, pp. 1276, 1292). Subsequent amendments (Stats. 1937, ch. 296, § 2, p. 651, and Stats. 1941, ch. 833, § 2, p. 2390) continued this wording.

Effective July 1, 1945, these provisions were transferred into the Revenue and Taxation Code (Stats. 1943, ch. 658, § 1, p. 2308). Section 13956 of that code includes some of the former statute. It provides: "In determining the value of any estate or interest to the beneficial enjoyment or possession of which there is a person presently entitled, no allowance is made on account of any contingent incumbrance on the estate or interest, nor on account of any contingency upon the happening of which the estate or interest, or some part of it, might be abridged, defeated, or diminished." This is a part of the statute of 1911 retained as section 8 of the 1935 act.

That part of section 8 commencing with the words, "provided however," is now included in section 14401 of the Revenue and Taxation Code, which is the basis of the present con-

troversy. In essence, that section provides, as it has since 1911, that one who has paid taxes upon a transfer subject to a ". . . contingent incumbrance or any contingency which might burden, abridge, defeat, or diminish the estate or interest of the transferee . . . " is entitled to a refund upon the happening of the contingency.

The provisions of the Revenue and Taxation Code "in so far as they are substantially the same as existing statutory provisions relating to the same subject matter shall be construed as restatements and continuations, and not as new enactments." (Rev. & Tax. Code, § 2.) Also, section 14401, which is the second portion of section 8 of the 1935 act, must be read in conjunction with section 13956, which is a part of the old section. When considered together, and in the light of the historical development of the legislation, it becomes clear that the "contingency" applicable under section 14401, is the technical contingency of the type which may vest, divest or diminish an estate, as in the case of the contingent remainder.

Clearly, since 1893 when the Legislature undertook to specify the tax obligations of one succeeding to an estate subject to divestment upon the occurrence of an event, it used the word "contingency" in the sense usually employed in conveyancing, and with reference to the divesting or diminution of a presently vested or enjoyed estate by the vesting or coming into enjoyment of a contingent future estate. This is apparent from the use of the term "collateral estates" in the early statutory title, and by the general context of the legislation which repeatedly spoke of "beneficial enjoyment of possession of which there is a person presently entitled." Under such circumstances, "no allowance [was made] on account of any contingent incumbrance on the estate or interest, nor on account of any contingency upon the happening of which the estate or interest, or some part of it, might be abridged, defeated, or diminished." The words "abridged, defeated, or diminished" are traditional terms utilized by a conveyancer or testator in the creation of a contingent estate or the reservation of a reversionary interest. Of interest, if not authority, is the marginal heading, "Life Estates," opposite the text of the early statutes beginning with that of 1893.

Considering the text of the legislative declaration in the light of its long statutory history, obviously the word "contingency" should be construed as applying to the *quantum* of the taxable estate, which is its time of continuance, or degree of interest, as in fee, during life, or for years (see

Bouvier's Law Dictionary, p. 1007), rather than the *pecuniary value* of the estate. It is the occurrence of a contingency abridging, defeating, or diminishing the *quantum* of the estate, which warrants a refund of a part of the tax paid, rather than the occurrence of some contingency which reduces the pecuniary value of the property in which, it develops, the taxpayer does not own the absolute estate.

This construction of section 14401 is supported by the New York decisions, which are persuasive in view of the fact that the first Inheritance Tax Law of California (Stats. 1893, ch. 168) was modeled on the New York Act of 1887 (Dos Passos on Inheritance Tax Law [2d ed. 1895], p. 23). The early New York statutes have been ". . . criticized as being imperfect and impracticable of enforcement in many instances, and especially with respect to the taxation of contingent remainders or future estates . . ." (Dos Passos, *supra,* p. 23). The courts recognized the early statute of that state as involving problems connected with contingent remainders (*In re Curtis,* 142 N.Y. 219, 223 [36 N.E. 887]; *In re Roosevelt's Estate,* 143 N.Y. 120 [38 N.E. 281, 25 L.R.A. 695]), and Justice Cardozo explained provisions similar to those in the California statutes as designed ". . . to put at once into the treasury of the state the largest sum which in any contingency the remaindermen may have to pay . . ." (*Matter of Parker,* 226 N.Y. 260 [123 N.E. 366]).

The practical aspect of the problem also compels the conclusion, that section 14401 allows a refund only upon a contingency affecting the *quantum* of an estate. If it were construed as applicable to any contingency which might simply affect the pecuniary value of property passing by inheritance, few valuations would be final. For example, if prior to the appraisal of the Willis Company's stock a person had a cause of action against the corporation, the recovery of a substantial amount of damages would adversely affect the value of the shares. Again, if it subsequently developed that an embezzlement of corporation funds had likewise reduced its assets, the shareholder should not be permitted to seek a refund under section 14401 because the loss was unknown at the time the stock was appraised.

On the other hand, as often occurs, after the value of stock is fixed in a probate proceeding, real or other property owned by the corporation may be found to have doubled or trebled in value. Certainly the stockholder should not be liable for an additional tax based upon the increased value of his shares.

■ There is no equitable basis for the code section. It does not state a broad equitable policy, but lays down a narrowly limited rule and a specific time limit within which a tax refund may be obtained under specified circumstances. To change an assessment of property after its value has been fixed by a determination of the probate court because of either an increase or decrease in its pecuniary value would do away with finality in tax liability. That would be unfair to the state as well as to the taxpayer.

The rule plainly stated by the statutes of this state is that after an order determining tax liability has become final, it is conclusive and has the same force and effect as a judgment in a civil action (Rev. & Tax Code, § 14672; see, §§ 14361, 14506 et seq.). The respondent admits that the order fixing the tax which he paid has become final, and "unless relief can be granted under the provisions of Section 14401 of the Revenue and Taxation Code, no other remedy is available." For the reasons which have been stated, that section is inapplicable to the facts shown in the present record and it was error for the court to have allowed the refund.

The order is reversed.

Gibson, C. J., Traynor, J., and Spence, J., concurred.

SCHAUER, J.—I dissent. It is my view that the provisions of the Revenue and Taxation Code clearly evidence an intent by the Legislature to deal fairly with taxpayers by providing for a refund in the event of just such a contingency as arose in this case. It further appears to me that the result set forth in the majority opinion is unjust to the taxpayer, and has been reached by strained and unrealistic interpretation of the statutes involved.

For a more detailed analysis and discussion of the points involved, I refer to the unanimous opinion of the District Court of Appeal, Second Appellate District, Division Three, prepared for that court by Mr. Justice Vallée (reported in 203 P.2d 91), which I adopt as a part of this dissent.

Shenk, J., concurred.

Carter J.—I dissent.

It is impossible for me to agree with the strained and restricted construction of section 14401 of the Revenue and Taxation Code as enunciated by a majority of this court. The effect of such an interpretation is to make nugatory, by a process resembling sleight of hand, the beneficial purpose

obviously intended by the Legislature. We are given a lesson in the legislative history of the section and then we are asked to believe that because of this lesson, the words "any contingency" found there do not really mean what they say but refer to something akin to a contingent remainder. We are also asked to believe that because the words "abridge, defeat or diminish" are commonly used by conveyancers that they must be construed in any situation as they would be where the subject matter of the action was real property; and that the word "quantum" does not mean "quantity" or "amount" but must be given its technical meaning as used in the law of real property, that is, the length of time an estate endures. There is no reason in law, equity or common sense why the perfectly plain words of the statute should be read in the light of ancient history. This court should derive the meaning of the section from the section itself when there is no ambiguity in the language used. As Mr. Justice Holmes said in *Towne* v. *Eisner*, 245 U.S. 418, 425 [38 S.Ct. 158, 62 L.Ed. 372]: "A word is not a crystal transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used."

Section 14401 of the Revenue and Taxation Code provides as follows: "If any tax has been paid to the county treasurer on a transfer subject to a contingent incumbrance or any contingency which might burden, abridge, defeat, or diminish the estate or interest of the transferee, and the gift was valued without allowance for the incumbrance or contingency, upon the taking effect of the incumbrance or the happening of the contingency the person who paid the tax is entitled to a refund in an amount equal to the difference between the tax paid and *any smaller tax that would have been paid on a valuation of the estate or interest actually enjoyed or of the estate or interest remaining after the taking effect of the incumbrance or the happening of the contingency.*" [Emphasis added.]

It seems clear from the language used that the purpose of the Legislature was to provide for any unknown contingencies which might burden, abridge, defeat, or diminish an estate or interest, and to allow the gift to be taxed subject to a refund if and when such a contingency occurred. If the framers of the section had intended the section to apply only where the gift was subject to a contingent remainder, why was the word "burden" used? The words "abridge, defeat

and diminish" are applicable to such a gift, but how can such a contingent remainder burden the estate which precedes it? A burden is defined: "To load, encumber with weight, lay a heavy load upon; to oppress with anything grievous or trying; to overload; as to burden a nation with taxes." (Webster's New Int. Dict. (2d ed.).) And the word has been frequently used with reference to taxes. (*Hewitt* v. *Dean,* 91 Cal. 5, 13 [27 P. 423] ; *Pioneer Express Co.* v. *Riley,* 208 Cal. 677, 687 [284 P. 663] ; 24 Cal.Jur. § 9, p. 25.) In *Wells* v. *City of Savannah,* 181 U.S. 531, 541 [21 S.Ct. 697, 45 L.Ed. 986], the court said: "The word 'burthen' . . . is certainly sufficiently comprehensive to include municipal taxes." In the instant case, the income tax deficiency levy was certainly a burden to the corporation—a debt owing by it to the federal government. Further, it was a debt owing by operation of law—the only thing that was lacking at the time the appraisal was made was notice to the corporation of the debt owed by it. It is agreed that had the appraiser known of this debt, he would have taken it into consideration in determining the value of the stock as of the date of death of Charles Golden Willis, and the amount of tax payable by respondent would have been $1,335.22 less than that actually paid. Because this debt is a burden upon the assets of the corporation, because the payment of the debt diminishes the value of each share of stock in the closed corporation to be enjoyed by respondent, and consequently reduces the "valuation of the estate or interest actually enjoyed" by him, he is entitled, under the very terms of the statute, to a refund of the excess tax paid by him.

It is difficult to conceive of a word with any broader meaning than the one used in the statute. "Any" is defined at length by Webster (New Int. Dict. (2d ed.)) and to give a few illustrations, we find that it means "One indifferently out of a number; one indiscriminately of whatever kind, . . . Indicating a person, thing, event, etc., as not a particular or determinate individual of the given category but whichever one chance may select; this, that, or the other; one or another; . . . Indicating a person, thing, etc., as one selected without restriction or limitation of choice, with the implication that every one is open to selection without exception; one, no matter what one; . . ." Had the Legislature intended that the contingency must be one that effects a change in the *duration* of time the estate was to continue in the donee, why was the word "valuation" used in the latter part of the sec-

tion? That sentence provides that when the incumbrance takes effect, or the contingency happens, the person who paid the tax is entitled to a refund in an amount equal to the difference between the tax paid and any smaller tax that would have been paid *"on a valuation of the estate or interest actually enjoyed."* Because of the contingency of the income tax deficiency levy upon the assets of the corporation, respondent is actually enjoying an interest which is less valuable than it would have been had the levy not been made and paid. Had the Legislature intended to refer only to a contingent remainder there would be absolutely no reason for the latter part of the sentence just quoted. That part of the sentence reads: ". . . or of the estate or interest remaining after the taking effect of the incumbrance or the happening of the contingency." Since the statute provides for the taxation of the estate or interest *remaining* after the taking effect of the incumbrance or the happening of the contingency, how is it possible to say, as do the majority, that the section provides for a refund only "upon a contingency affecting the *quantum* of an estate . . ." and that it is not to be construed as applicable "to any contingency which might simply affect the pecuniary value of property passing by inheritance . . ." but that the "quantum of the taxable estate . . . is its time of continuance, or degree of interest, as in fee, during life, or for years . . ." Under the construction placed on the section by the majority, it is possible for a tax to be paid on an estate which turns out to be absolutely worthless with no refund available to the taxpayer. Suppose, due to any contingency imaginable, respondent paid a tax on these shares of stock and that due to an error made by the appraiser, they were worth only the paper on which they were printed. Respondent may keep the paper forever if he so chooses, but their pecuniary value is nothing. Is he then entitled to no refund because the *length of time* his ownership in them continues is not involved? It is possible, of course, for the time an estate endures to have an effect on its value because a life estate is obviously less valuable than a estate in fee, but there is absolutely no reason to restrict the meaning of "valuation" to this one possibility, or the word "contingency" to one affecting only the duration of an estate or interest.

We are informed that before the codification of the Inheritance Tax Law, effective July 1, 1945, the provisions of both sections (13956 and 14401) were contained in a single sentence of the prior statute, which read, *in full*, as follows: "In

estimating the value of any estate or interest in property, to the beneficial enjoyment or possession whereof there are persons or corporations presently entitled thereto, no allowance shall be made on account of any contingent incumbrance thereon, nor on account of any contingency upon the happening of which the estate or property or some part thereof or interest therein might be abridged, defeated or diminished; provided, however, that in the event of such incumbrance taking effect as an actual burden upon the interest of the beneficiary, or in the event of the abridgement, defeat or diminution of said estate or property or interest therein as aforesaid, a return shall be made to the person properly entitled thereto of a proportionate amount of such tax on account of the incumbrance when taking effect, or so much as will reduce the same to an amount which would have been assessed on account of the actual duration or extent of the estate or interest enjoyed. Such return of tax shall be made in the manner provided by subdivision 4 of section 11 hereof upon order of the court having jurisdiction. Said application for return of tax must be made within six months of the happening of said contingency.'' (Inheritance Act of 1935, § 8(2), Stats. 1935, ch. 358.)

Note that in section 14401 the word ''burden'' has been added to the words ''abridge, defeat and diminish,'' and note, also, that the earlier section provided for the ''duration'' of the estate actually enjoyed, while the section *presently* in effect specifically points out that the taxpayer is entitled to a refund equal to the difference between the tax paid and any smaller tax that would have been paid on a *valuation* of the estate or interest actually enjoyed. Another point to be considered is that we now have two sections rather than one. To hold that we are to construe the present statute as it previously read is to hold that the Legislature intended to accomplish nothing by the change in the language used.

If the section is to be construed so that the words ''any contingency'' mean only something ''akin to a contingent remainder,'' there is no relief for a taxpayer who has paid a tax based on a mistake made by an appraiser when that mistake affects merely the pecuniary valuation of an interest. It is impossible for me to agree with such a construction, and I am of the opinion that the order should be affirmed.

Respondent's petition for a rehearing was denied March 27, 1950. Shenk, J., Carter, J., and Schauer, J., voted for a rehearing.