[No. 14011.   In Bank. — September 2, 1891.]

R. E. HEWITT, RESPONDENT, v. G. L. DEAN ET AL., APPELLANTS.

MORTGAGE — DEFAULT IN PAYMENT OF INTEREST — OPTION TO FORECLOSE — NOTICE OF ELECTION — DEMAND OF PAYMENT. — Where a note secured by mortgage provides that if the interest should not be paid when due, the whole sum of principal and interest shall become immediately due and payable, at the option of the holder, and the mortgage provides that in case of default in payment of any installment of interest on the note when due, the mortgagee may foreclose the mortgage, it is not necessary that the mortgagee should give to the mortgagors any notice of his election to consider the whole principal sum due upon their failure to pay the interest when it matured, nor that he should make any demand upon them for payment prior to commencing an action to foreclose the mortgage.

ID. — AGREEMENT FOR NOTICE OF ELECTION NOT IMPLIED. — It is competent for the parties to include in the note or mortgage an agreement that notice of election to foreclose for non-payment of interest shall be given as a condition precedent to instituting the suit; but in the absence of such express provision, it will not be implied; and an agreement that the whole sum of principal and interest shall become immediately due. at the option of the holder of the mortgage, must be held to be an absolute agreement, depending solely upon the option of such holder, and not requiring him to notify the mortgagor of his own laches or of the election of the holder of the mortgage to exercise the option.

ID. — REASONABLE TIME FOR EXERCISE OF OPTION. — The holder of the mortgage is not required to exercise his option immediately upon failure of the mortgagor to pay the interest, but he may exercise it within a reasonable time after default.

ID. — WAIVER OF RIGHT OF ELECTION — EXTENSION OF TIME FOR PAYMENT. — A grant of an extension of the time for the payment of interest for a few days, at the request of the mortgagors, is no waiver of the right of the holder of the mortgage to elect to consider the whole principal sum due within a reasonable time after default, if there is a failure to make any payments within the extended time.

ID. — ESTOPPEL — FORBEARANCE. — Although the holder of the mortgage may so deal with the mortgagor as to be estopped from asserting his right of election or to waive such right, yet mere forbearance or inaction within the limits of a reasonable time will not cause such estoppel or waiver.

AGREEMENT AS TO TAXES — CONSTRUCTION — EVIDENCE — INTENTION OF PARTIES — MORTGAGE TAX. — A cotemporaneous agreement between the mortgagors and mortgagee that if the mortgagors shall present proper official receipts showing the payment of all taxes against the property covered by the mortgage, they should receive a credit of two and one half per cent upon the mortgage note, must be construed by the court; and testimony of witnesses as to whether the mortgage tax was intended to be included in the expression "all taxes against the property" is inadmissible.

ID. — CONSTITUTIONAL LAW — VALIDITY OF CONTRACT AS TO MORTGAGE TAX. — Assuming that such agreement includes the mortgage tax, it is not in violation of section 5 of article XIII. of the state constitution. It is not a contract binding or enforceable against the mortgagors, or obligating them to pay any tax upon the mortgage, but merely extends to them the privilege given by the constitution itself, which permits them to pay the mortgage tax and have the amount so paid deducted from the debt.

ID. — ATTORNEYS' FEES — LIMIT OF PERCENTAGE. — Where a note secured by mortgage provides for an attorney's fee of five per cent on the principal sum in case of foreclosure, the amount allowed by the court cannot exceed that limit.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Victor Montgomery*, for Appellants.

*Ray Billingsley*, for Respondent.

HARRISON, J. — This is an action for the foreclosure of a mortgage upon real property, executed by the defendants to the plaintiff. The note to secure which the mortgage was given is as follows: —

"$2,500. SANTA ANA, CAL., Oct. 29, 1887.

"Three years after date, for value received, we promise to pay R. E. Hewitt, or order, at the Commercial Bank

of Santa Ana, the sum of twenty-five hundred dollars, with interest at the rate of 12½ per cent per annum from date until paid; interest payable annually, and if not so paid, to be compounded annually and bear the same rate of interest as the principal; and should the interest not be paid when due, then the whole sum of principal and interest shall become immediately due and payable, at the option of the holder of this note. Should suit be commenced to enforce the payment of this note, we agree to pay an additional sum of five per cent on principal as attorneys' fees in such suit. Principal and interest payable in gold coin of the United States.

"MRS. CORNELIA R. DEAN.

"G. L. DEAN."

The mortgage contained the following clause: "And the mortgagors promise to pay said note according to the terms and conditions thereof, and in case of default in payment of the same, or of any installment of the interest thereon when due, the mortgagee may foreclose this mortgage, and may include in such foreclosure a reasonable counsel fee, to be fixed by the court."

The complaint herein was filed January 18, 1889. It alleges "that no part of the principal sum nor of the interest mentioned in said note has been paid," and contains, also, the following averment: "That because of said interest not having been paid when due, and upon the provision with reference thereto contained in said note, the plaintiff elects to consider and declare the whole sum of principal and interest of said note now due and payable."

The plaintiff gave no notice to the defendants prior to the commencement of the action of this election, nor did he make any demand upon them for payment. Judgment was rendered in favor of the plaintiff, and from this judgment, and from an order denying a new trial, the defendants have appealed.

1. It was not necessary that the plaintiff should give to the defendants any notice of his election to consider the whole principal sum due upon their failure to pay

the interest when it matured, or to make any demand upon them for payment prior to commencing the action. (*Whitcher* v. *Webb*, 44 Cal. 127; *Leonard* v. *Tyler*, 60 Cal. 299; *Buchanan* v. *Berkshire Life Ins. Co.*, 96 Ind. 510; *Princeton Loan and Trust Co.* v. *Munson*, 60 Ill. 371; *Cundiff* v. *Brokaw*, 7 Brad. App. 147; *Johnson* v. *Van Velsor*, 43 Mich. 208.)

The provision of the note that upon such default the whole sum of principal and interest should become immediately due and payable, at the option of the holder thereof, was an absolute agreement on the part of the defendants, depending solely upon the option of the plaintiff, and did not require any notice from him that he elected or intended to exercise such option, in order to make this agreement binding upon the defendants. The fact of their default was peculiarly within their own knowledge, and they also knew that by the provisions of the note they had agreed that upon such default the plaintiff might, within a reasonable time thereafter, consider the principal sum named in the note as due, and institute proceedings for the foreclosure of the mortgage. It was competent for them to include in their note or mortgage a provision requiring notice of such election as a condition precedent to instituting the suit; but instead thereof they have agreed that upon the mere fact of the default the plaintiff may, at his option, treat the whole amount as due, and foreclose the mortgage. To add to this agreement the requirement that the plaintiff should give notice of his election would be for the court to add to the agreement of the parties a condition which they have not themselves chosen to make. In *Buchanan* v. *Berkshire Life Ins. Co.*, 96 Ind. 510, the court said: "Such a notice might have been contracted for and made a condition precedent, but it was not. Appellant was bound to know that by his default the obligee had the right to regard and treat the whole sum as due and collectible, and that nothing was required of him except the exercise of his own will. Upon making default, it was the duty of appellant to seek the creditor. It clearly was

not the duty of the creditor to seek him and notify him of the results of his own laches."

The case of *Dean* v. *Applegarth*, 65 Cal. 391, differed from the present in the fact that in that case it was provided that in case of default the rate of interest upon the note should be increased, at the option of the holder, and the court held that this option must have been exercised and manifested in some way by the plaintiff before it could have effect; that the burden of the increased interest could not be imposed upon the defendant by any undisclosed intention of the plaintiff, or by a mere secret, unmanifested intention in the mind of the mortgagee or holder of the note. In that case, however, the court held that the notice of the election could be sufficiently given to the maker of the note by merely bringing an action to foreclose the mortgage.

The plaintiff was not required to exercise this option immediately upon the failure of the defendants to pay the interest. He could not know in advance that they would make default, and he would therefore be allowed a reasonable time within which thereafter to determine whether he would exercise his right of option. This provision was inserted for his benefit, and he was not compelled to exercise the option immediately upon the default under the penalty of losing all right to exercise it, but was to be allowed a reasonable time for enabling him to determine whether its exercise was necessary for his protection or advantage. " 'Immediately due at the option of the holder' means immediately upon or after his election, and not immediately upon default, providing he immediately elects." ( *Wheeler & W. M. Co.* v. *Howard*, 28 Fed. Rep. 741.)

At the trial, certain evidence was presented, to the effect that a "few days" before the interest fell due, one of the defendants, in an interview with the plaintiff, requested of him an extension of a few days within which to pay the interest, and was told by the plaintiff that he could get along for a few days, and, under the circumstances, he would not push him. The defendants, how-

ever, did not pay the interest within the "few days," or take any steps in reference thereto, except that about the 20th of November one of them asked the plaintiff if he would accept all of the principal and interest, to which the plaintiff replied that he wanted the money, and expected it. The defendants, however, did not make any payments to the plaintiff, although several times urged by him to carry out their proposition, and upon their failure to do so, he commenced this action. These acts and sayings of the plaintiff indicate no act of waiver on his part, or failure to make his election within a reasonable time after the default. Although the plaintiff might have dealt with the defendants in such a way that he would be estopped from asserting his right of option, or by some act of his waive such right, yet mere forbearance or inaction would not cause such waiver. His leniency towards the defendants, by forbearing to make an election within a reasonable time, could not impair his right, or be regarded by them as a waiver thereof. Defendants, moreover, do not allege in their answer any waiver of their default by the plaintiff, or any act on his part waiving his right to make the election. Neither do they in their answer, nor did they at the trial, assert any equity in their behalf, or, by offering to pay the plaintiff the interest which they admit had matured, seek to relieve themselves from the consequences of their default.

2. At the same time with the execution of the note and mortgage, and as a part of the same transaction, the plaintiff executed to the defendants the following instrument:—

"For valuable consideration, I hereby promise and agree to give credit for two and one half ($2\frac{1}{2}$) per cent of the twelve and a half ($12\frac{1}{2}$) per cent interest on the mortgage note signed 'Mrs. Cornelia R. Dean' and 'G. L. Dean,' in my favor, dated October 29, 1887, provided said Mrs. Cornelia R. Dean and G. L. Dean shall, on or before the fifteenth day of December of any year after the present, during continuance of said note unpaid, present to me proper official receipts show-

ing the payment of all taxes against the property covered by the mortgage securing payment of said note for that year respectively.                    R. E. HEWITT."

At the trial the defendants offered to show that the words "all taxes" were intended to cover and include the mortgage tax. The court excluded the evidence, and its ruling in this respect is assigned as error.

The court did not err in this ruling. There was no ambiguity in the words themselves. If the "mortgage tax" is a tax "against the property" described in the mortgage, it is clearly included in the term "all taxes," and if it is not a tax against the property, it is quite as clearly excluded from the term. In either case, the agreement was to be construed by the court, and not to be determined upon the testimony of witnesses as to the intention of the parties.

The defendants contend that this instrument is a contract in violation of section 5, article XIII., of the constitution, and that thereby they are released from all obligation to pay any interest upon the note secured by the mortgage. Section 5 of article XIII. of the constitution provides that "every contract hereafter made, by which a debtor is obligated to pay any tax or assessment on money loaned, or on any mortgage, deed of trust, or other lien, shall, as to any interest specified therein, and as to such tax or assessment, be null and void." Section 4 of the same article provides that "a mortgage . . . . by which a debt is secured shall, for the purposes of assessment and taxation, be deemed and treated as an interest in the property affected thereby. . . . . The value of the property affected by such mortgage, . . . . less the value of such security, shall be assessed and taxed to the owner of the property, and the value of such security shall be assessed and taxed to the owner thereof. . . . . The taxes so levied shall be a lien upon the property and security, and may be paid by either party to such security."

Assuming that the tax upon the mortgage referred to in section 5 is a tax "against the property" by virtue of the provision of section 4 that the mortgage is, for the

purposes of taxation, "an interest in the property affected thereby," and that the tax levied thereon is a "lien upon the property," as well as upon the security, the agreement referred to does not contravene the provisions of section 5. The agreement is solely upon the part of the mortgagee, and is in no respect binding upon or enforceable against the mortgagors, and it cannot, under any theory, be said to be a "contract" on their part; nor are they by its terms in any way "obligated" to pay any tax upon the mortgage.

It is well known that prior to the adoption of the present constitution it was the universal custom for the mortgagee to incorporate into the mortgage a stipulation binding the mortgagor to pay all taxes that might be levied upon the mortgage, or the debt secured thereby. This provision engendered a vast amount of litigation, and the collection of this tax was stoutly resisted at all points, chiefly upon the ground that a tax imposed upon the land, and also upon a mortgage thereon, was double taxation and unconstitutional. As a consequence of various decisions of the supreme court in this litigation, all money loaned upon mortgage security escaped taxation, and the owner of the land mortgaged was compelled to pay more than his share of the expenses of government. It was for the purpose of obviating this consequence that the constitutional convention adopted the foregoing provision of section 5, article XIII., in order that a portion of the taxes might be collected from the mortgagee, and that the burden upon the mortgagor might not at the same time be increased. The provision thus incorporated into the constitution was intended for the benefit of the borrower, but it is unnecessary to say that the results expected therefrom have not been realized. All experience has shown that the rate of interest is governed by the inflexible laws of trade, and is regulated by the same law of supply and demand as that which governs all other articles of commerce, and that legislatures and constitutional conventions are powerless in their attempts to change this law; that whenever the

state imposes a tax upon a commodity, the burden of
that tax is borne by him whose necessities require him
to purchase, and not by him who holds it for sale. This
subject in its relations to a tax upon mortgages is so
fully presented in the opinion of Mr. Justice Crockett
in the case of *Savings and Loan Society* v. *Austin*, 46 Cal.
415, that it is unnecessary to do more than to state the
proposition that whatever burdens in the form of taxa-
tion the state imposes upon money which is loaned are
in reality borne by the borrower, and not by the lender;
that the lender, in fixing the rate of interest for the loan,
will invariably add the amount of this tax to the mar-
ket value of the money, and, under the guise of interest,
collect from the borrower a sufficient amount to reim-
burse himself for the amount of the tax.

Now, if the parties to a loan can by an arrangement
between themselves which shall not violate the require-
ments of any special provision of the constitution, pro-
vide for the payment of the mortgage tax in such a
mode that the burden upon the borrower shall not be
increased, but may possibly be diminished, such arrange-
ment is not only not in conflict with the letter of the
constitution, but is in direct harmony with its spirit and
the evident purpose of its framers. Of this character is
the instrument under consideration. By it, as we have
seen, there is created no obligation upon the borrower
to pay any portion of the mortgage tax. He is merely
granted by the lender a privilege, of which he may avail
himself or not, as he may choose, of reducing the inter-
est upon his loan, to the market value of the money, by
a liquidation on his part of another obligation of the
lender. This privilege is in reality given to the bor-
rower by the constitution itself, in that provision which
permits him to pay the mortgage tax, and have the
amount so paid deducted from his debt. Under such
arrangement the lender will always fix the conventional
rate of interest at a figure sufficiently high to cover the
whole estimated rate of the mortgage tax. If, however,
at any time during the existence of the loan, that tax

shall be less than this estimated rate, the borrower, instead of the lender, will receive the benefit of such reduction, while if the rate be at any time increased, he will leave the lender to pay the tax, and himself pay only the conventional rate of interest. Such an agreement is, in our opinion, in entire harmony with the spirit of the constitution, and must be held to be valid.

3. The court erred in allowing to the plaintiff the sum of three hundred dollars for attorneys' fees. The note provided that " should suit be commenced to enforce the payment of this note, we agree to pay an additional sum of five per cent on principal as attorneys' fees in such suit." As no action could be brought upon the note except in connection with a suit to foreclose the mortgage, the reasonable counsel fee provided for in the mortgage must be held to be limited in amount by this agreement of the parties. This was evidently deemed by the attorney for the plaintiff to be the correct construction of this clause, inasmuch as in the prayer to his complaint he only asks for judgment "for five per cent on the said principal sum of two thousand five hundred dollars for attorneys' fees, as provided in said promissory note, and being such reasonable counsel fee as is provided in said mortgage."

The order denying a new trial is affirmed; and the court below is directed to modify the judgment by reducing the amount allowed for attorneys' fees to $125, as of the date the judgment appealed from was entered, and as so modified, the judgment shall stand affirmed.

BEATTY, C. J., McFARLAND, J., PATERSON, J., SHARPSTEIN, J., GAROUTTE, J., and DE HAVEN, J., concurred.