[S. F. No. 7635. In Bank.—November 4, 1918.]

J. F. WIENKE et al., Plaintiffs and Respondents, v. C. B.
    SMITH et al., Defendants and Appellants; GEORGE O.
    RICH et al., Defendants and Respondents; WM. H.
    ASH et al., Interveners and Appellants.

WAIVER—PLEADING—AFFIRMATIVE DEFENSE.—Waiver is an affirmative
    defense, and a defendant desiring to take advantage of it must set
    up in his answer the facts upon which he bases his claim.

FORECLOSURE OF MORTGAGE—DEFAULT IN PAYMENT OF INSTALLMENTS—
    WAIVER—MOTION FOR NONSUIT.—In a suit to foreclose a mortgage
    after default in payment of an installment of principal, the defense
    of waiver of default, which was not pleaded in the answer, is not
    available on motion for nonsuit; and where the motion was denied,
    it must be assumed on appeal that the trial court denied it, as it
    might properly have done, for the very reason that the pleadings
    laid no foundation for the attempted defense.

ID.—DEFINITION OF WAIVER—INTENT.—Waiver is the intentional relin-
    quishment of a known right after knowledge of the facts, and

always rests upon intent. It implies the intentional forbearance to enforce a right, and necessarily, therefore, assumes the existence of an opportunity for choice between the relinquishment and the enforcement of the right.

ID.—COMPULSORY ACCEPTANCE OF PAYMENT—LACK OF INTENT TO WAIVE DEFAULT.—Where a promissory note secured by a mortgage was payable in installments and provided that the whole sum might be declared due upon default in payment of an installment, and a collateral agreement between the mortgagors and mortgagees provided that all payments made by parties holding contracts of purchase of the mortgaged property should be turned over to the mortgagees, the receipt by the mortgagees of such payments after default in payment of an installment due on the note cannot be held to have evidenced an intention of the mortgagees to waive default in the payment of the installment of principal, as the receipt of such payments was compulsory, especially where the collateral contract provided that it should not affect the terms of the mortgage or be any defense in an action of foreclosure, and was to be considered only for the purpose of ascertaining the amount due on the note.

ID.—ACCELERATION OF PAYMENTS—ELECTION—NOTICE.—Where a note and a mortgage securing it provided for the acceleration of the due date of the principal on default in payment of any installment, the payees were not required, as a condition precedent to the institution of suit, to give notice of their election to declare the principal sum due, the commencement of the suit being sufficient notice.

ID.—ATTORNEY'S FEES—DEMAND.—Where a mortgage provided for counsel fees of five per cent of the debt due, if suit should be brought for the foreclosure of the mortgage, "at any time after default made in the payment of any of said installments," the liability to pay attorney's fees arose coincidentally with the right to foreclose, and a prior demand or notice was no more essential with respect to counsel fees than it was with respect to the collection of principal.

ID.—SECURITY FOR ATTORNEY'S FEES.—Where a mortgage provided specifically that "the mortgagors and mortgaged property are hereby made liable to the mortgagees for such counsel fees," the obligation for counsel fees was secured by the mortgage.

ID.—CONTRACTS OF PURCHASE OF MORTGAGED LAND—COLLECTION OF INSTALLMENTS—RIGHT TO FORECLOSE.—The claim that the mortgagees were bound, before foreclosing, to collect all payments due under contracts of purchase of the mortgaged land which were assigned to the mortgagees, or to terminate such contracts, is sufficiently answered by the provisions of the assignment of the contracts expressly providing that nothing contained in it, or arising from it, should be any defense to an action of foreclosure.

ID.—RIGHTS OF PURCHASERS—FORECLOSURE OF—JUDGMENT.—Where, in a suit to foreclose a mortgage, the rights of parties under contracts of purchase of the mortgaged property were investigated, the

amount each one still owed upon the contracts determined, an inter-
locutory decree made, giving those who had not forfeited their
contracts the right to make full payment thereon and receive a deed
conveying to them, respectively, the particular parcel purchased,
free of said mortgage lien, within ninety days after the date of
said decree, which decree was made after all installments of the
purchase money had become due, and after the expiration of ninety
days a further hearing was had and the rights of those who had paid
'up were determined, those entitled receiving deeds for their lots
free of the mortgage, and as to the others the decree of foreclosure
being made absolute, the latter decree was one strictly of foreclosure
which did not deprive the vendees of any substantial right.

APPEAL from a judgment of the Superior Court of San
Mateo County, and from an order denying a new trial. Henry
C. Gesford, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

J. E. Pemberton, Gavin McNab, and R. P. Henshall, for
Defendants and Appellants.

J. N. Young, for Interveners and Appellants.

Daniel A. Ryan, for Plaintiffs and Respondents.

THE COURT.—The defendants C. B. and Julia Smith,
and a number of persons who appeared as interveners during
the pendency of the action, prosecute appeals from the judg-
ment and from an order denying a new trial.

The complaint stated a cause of action to foreclose a mort-
gage upon lands described therein, given to secure a debt of
$43,655.25, evidenced by a note executed by C. B. Smith and
George O. Rich. The appellant Julia A. Smith is the wife
of her codefendant, C. B. Smith, and is not otherwise inter-
ested in the action. The debt was payable in installments,
five thousand dollars on May 1, 1911; five thousand dollars on
March 1, 1912; ten thousand dollars on March 1, 1913, and
$23,655.25 on or before March 1, 1916. The note provided
that "upon any default being made in the payment of any
installment, or in the payment of any interest, the whole
amount of the principal sum then unpaid shall become due at
the option of the holder hereof." The mortgage contained a
similar provision.

The first installment, due May 1, 1911, was paid. The action was begun on April 24, 1912. The complaint alleges that $3,112.15 had been paid on the five thousand dollars due March 1, 1912, and that the balance of that installment remained unpaid. The prayer was for the recovery of judgment for the entire amount of the promissory note remaining unpaid, and for the foreclosure and sale of the property mortgaged. The final judgment was that the plaintiffs recover of Smith and Rich $43,685.28, and for the foreclosure and sale of the property then remaining subject to the mortgage, for the purpose of paying said sum and costs.

In March, 1906, Wienke and wife, being the owners of the land in controversy, made a contract with C. B. Smith, providing that the land should be subdivided into lots, and should be sold by Smith, who, after deducting commissions, should pay the proceeds to Wienke and wife, until they had received thirty thousand dollars, or that Smith might pay them thirty thousand dollars at any time within five years, and that upon the receipt of said sum Wienke and wife should execute a deed to Smith for an undivided one-half of the property remaining unsold. Sales were made by Smith under this contract from time to time, the price being made payable in installments, and the proceeds as collected were paid to Wienke. On January 5, 1911, said contract was canceled. Rich became interested with Smith, and several instruments, including the note and mortgage herein sued upon, were executed for the settlement of the transactions had. The other instruments were as follows: (1) A deed from Wienke and wife, conveying to Smith and Rich all the interest of the grantors in the property described in the contract of March, 1906; (2) an agreement whereby Smith and Rich assigned and transferred to the Wienkes all of the outstanding contracts for the sale of parcels of the land, as additional security for the payment of the mortgage debt. This agreement (described in the record as the "assignment") provided that Smith and Rich should collect the installments due under the contracts of purchase, and pay the amount thereof over to the Wienkes monthly, the sums so collected and turned over to be applied as payments on the note and mortgage. It provided, further, that nothing therein contained should in any way interfere with the terms and conditions of the mortgage, and that, in the event of any suit being brought upon the note to foreclose the mortgage,

nothing contained in the agreement "or arising or resulting therefrom shall be any defense whatsoever to any action by said parties of the second part [Wienke and wife] to foreclose said mortgage or said mortgagors' right of redemption. It is further stipulated and agreed that in case of such action this contract, except as otherwise expressly provided herein, shall be considered only for the purpose of ascertaining how much money said parties of the second part received thereby, and in ascertaining the amount due said parties of the second part upon said promissory note." Only one further clause of this writing need here be mentioned, namely, one requiring Smith and Rich to pay all taxes on the land, and providing that if they should fail so to do, Wienke and wife might pay the same and deduct the amount so paid from the first money afterward received by them under the outstanding contracts of sale, and that to that extent such payments should not be applied on the mortgage debt. On the same day, January 5, 1911, the Wienkes made a written agreement with Smith and Rich, providing for the release from the lien of the mortgage, upon payment of specified sums, of the various lots embraced in the mortgaged tract. We shall refer to this instrument as the "release agreement."

The answer of the defendants C. B. and Julia Smith does not deny—on the contrary, it expressly admits—the default alleged in the complaint. It sets up certain affirmative matter designed to show that payment of the installment due on March 1, 1912, was prevented by the acts of Wienke. The findings of the court are against this defense, and the appellants have not in their briefs questioned the sufficiency of the evidence to sustain the findings in this regard. There is no plea that the plaintiffs waived the right given to them by the terms of the note and mortgage to declare the entire sum due for default in the payment of any installment. Nevertheless, it is contended that upon the facts shown in evidence the court below should have held that the plaintiffs had waived their right to foreclose for the entire sum named in the note. The evidence is substantially without dispute. The payments made on the mortgage debt consisted of collections made by Smith and Rich under the outstanding contracts for sales of lots, and turned over to the Wienkes in accordance with the provisions of the "assignment." Some of these payments were made by the lot purchasers direct to Wienke, instead of passing through

the hands of Smith and Rich.   The entire first installment of
five thousand dollars, due May 1, 1911, was paid.   Of the
$3,112.15 paid on the installment due March 1, 1912, the
greater part had been paid prior to the date upon which the
installment fell due.   Between March 1, 1911, and April 24,
1912, the day the action was begun, sums amounting to several
hundred dollars were paid to the plaintiffs pursuant to the
contracts of purchase and the "assignment."   A portion of
these sums was properly applicable by the plaintiffs to their
reimbursement for taxes which they had paid in October, 1911.
There still remained in their hands, however, applicable to the
payment of the principal of the note and mortgage, out of the
moneys received after March 1, 1912, and before the com-
mencement of the action, a small sum.   The respondents main-
tain that it amounted to $47.50.   The department opinion,
heretofore filed herein, fixes it at $217.50.   It is not important,
for the purposes of the present discussion, to determine which
of these figures is correct.   The contention of the appellants
Smith is that by accepting, after the maturity of the install-
ment payable March 1, 1912, a portion of the sum then due,
the plaintiffs waived their right to declare the entire sum of
the note due for a default in the payment of such installment.
They rely upon the rule declared in *Boone* v. *Templeman,* 158
Cal. 290, 295, [139 Am. St. Rep. 126, 110 Pac. 947], and
similar cases, where it was held that under a contract of sale
for a price payable in installments, with provision for a for-
feiture for failure to pay any installment when due, time be-
ing made of the essence of the contract, the acceptance of a
part of one installment after its maturity waives the right of
the vendor to terminate the contract for that default.   We
may assume, for present purposes, that the rule is equally
applicable to the foreclosure of a mortgage, where the sum
due is payable in installments, and the note and mortgage
give the payee the right to declare the principal sum due for
default in the payment of any installment.   But, so assuming,
we think the appellants in this case are not entitled to the
benefit of the rule for which they contend.   In the first place,
there was, as we have already pointed out, no plea of waiver.
Waiver is an affirmative defense, and a defendant desiring to
take advantage of it must set up in his answer the facts upon
which he bases his claim.   (*Hewitt* v. *Dean,* 91 Cal. 5, [27
Pac. 423] ; *Patten* v. *Pepper Hotel Co.,* 153 Cal. 460, 469, [96

CLXXIX Cal.—15

Pac. 296].) It is no answer to this point to say that the defendants made the asserted waiver a ground of motion for nonsuit. Their motion was denied, and we must assume that the court denied it, as it might properly have done, for the very reason that the pleadings laid no foundation for the attempted defense. The appellants Smith and wife did, it is true, offer to file an amended answer, but leave so to do was denied them, and it is not claimed that the court erred in this ruling.

But beyond the mere matter of pleading, we think the acceptance by the respondents of the sums paid them should not, under the circumstances of this case, be held to have worked a waiver of their right to declare the principal sum due. These sums were not paid and received in performance, solely, of the obligation embodied in the note and mortgage. They were paid pursuant to the collateral agreement of even date (i. e., the "assignment"), whereby Smith and Rich were bound to turn over to the Wienkes, and the latter were bound to receive, all payments made by purchasers of lots under their contracts. The Wienkes had no right to refuse any such payments. Under the "release agreement," executed contemporaneously with the mortgage and the "assignment," they were required, upon payment in full for any lot, to release that lot from the lien of the mortgage. The holders of contracts were, therefore, interested in the transmittal to the Wienkes of all installments paid by them. Being under an obligation, arising from transactions outside of the note and mortgage, to receive such payments, the Wienkes cannot by such receipt be held to have waived their right to declare the principal sum due. "Waiver always rests upon intent. Waiver is the intentional relinquishment of a known right after knowledge of the facts." (*Alden* v. *Mayfield*, 164 Cal. 6, 11, [127 Pac. 45].) It implies "the intentional forbearance to enforce a right" (Id.), and necessarily, therefore, assumes the existence of an opportunity for choice between the relinquishment and the enforcement of the right. In this case the Wienkes were not in a position to elect whether to accept the payments or to refuse them. The "assignment" required them to accept the sums collected from lot purchasers, and there is no good ground, in reason and equity, for saying that by so accepting they manifested an intention to surrender the privilege given to them by the note and mortgage of declaring the entire principal sum due for default

in the payment of an installment. This conclusion is fortified by the provisions of the contract of "assignment," already quoted, to the effect that nothing therein contained shall in any way affect the terms and conditions of the mortgage, or be any defense to an action of foreclosure, and that the contract shall be considered only for the purpose of ascertaining the amount due by Smith and Rich upon the note. These clauses clearly manifest the intention of the parties that the payments provided to be made under this agreement are not to affect the rights created by the note and mortgage.

The other points made by the appellants Smith are plainly without merit, and require only the briefest notice.

Both the note and the mortgage provided for the acceleration of the due date of the principal on default in the payment of any installment. The payees were not required, as a condition precedent to the institution of the action, to give notice of their election to declare the principal sum due. The commencement of the suit was a sufficient notice. (*Whitcher* v. *Webb*, 44 Cal 127; *Hewitt* v. *Dean*, 91 Cal. 5, [27 Pac. 423]; *Trinity Bank* v. *Haas*, 151 Cal. 553, [91 Pac. 385].) The mortgage provided for counsel fees of five per cent of the debt due, if suit should be brought for the foreclosure of the mortgage, "at any time after default made in the payment of any of said installments." The liability to pay attorney's fees arose coincidentally with the right to foreclose, and a prior demand or notice was no more essential with respect to counsel fees than it was with respect to the collection of the principal. The contrary contention is not supported by the cases cited by the appellants, all of which deal with an entirely different state of facts.

It is asserted that there should have been merely a personal judgment for counsel fees, because, as is claimed, the obligation to pay such fees was not secured by the mortgage. The argument has no foundation in fact. The mortgage provides specifically that "the mortgagors and mortgaged property are hereby made liable to the mortgagees for such counsel fees." The instrument is not at all similar to that considered in *Klokke* v. *Escailler*, 124 Cal. 297, [56 Pac. 1113], where by the express terms of the mortgage the lien did not cover counsel fees.

The claim that the mortgagees were bound, before foreclosing, to collect all payments due under the contracts of pur-

chase assigned to them, or to terminate such contracts, is sufficiently answered by the provisions of the "assignment" itself, which expressly provided that nothing contained in it or arising from it should be any defense to an action of foreclosure.

The appellants make one further point, which also arises on the appeal of the interveners. The latter were holders of contracts under the agreement above mentioned between the plaintiffs and Smith. Upon the trial of the action their rights were fully investigated, the amount each one still owed upon the contracts was determined, and an interlocutory decree was made, giving those who had not forfeited their contracts the right to make full payment thereon and receive a deed conveying to them, respectively, the particular parcel purchased, free of the said mortgage lien, within ninety days after the date of said decree. This decree was made after all of the installments of the purchase money on said contracts had become due and payable, according to their terms. After the expiration of the ninety days prescribed by said interlocutory decree, a further hearing was had, the rights of those who had paid up in the meantime were adjusted and determined, some of them received deeds for their lots free of the mortgage, and as to the others, the decree of foreclosure of the mortgage was made absolute. The decree deprived the interveners (and, *a fortiori*, the appellants Smith) of no substantial right. It was in effect the usual decree of a strict foreclosure of a vendee's right to purchase upon his failing to make the payments as provided in his contract.

The judgment and the order denying a new trial are affirmed.