[Sac. No. 3620. In Bank.—August 19, 1925.]

## F. E. JOHNSON, Respondent, v. R. G. KAESER et al., Appellants.

[1] CONTRACTS — SALE OF PERSONAL PROPERTY — CONDITIONAL SALE AGREEMENT.—A contract for the sale of personal property which provides that the title to the property which is the subject thereof shall remain in the seller until the full amount of the purchase price shall have been paid, and that on default in the payment of the installments of principal and interest the seller may declare the entire purchase price, or so much thereof as then remains unpaid, due and payable, and may thereupon retake possession of the property, is a conditional sale agreement.

[2] ID.—DEFAULT OF PURCHASER—REMEDIES OF SELLER.—It is optional with the seller, under a conditional sale agreement, upon default by the purchaser in complying with any of the vital terms of the agreement, either to treat the contract as involving a conditional sale and retake possession of the property, or ratify the contract as one involving an absolute sale of the property and so sue for the recovery of all moneys then payable thereunder, the seller in

1. See 22 Cal. Jur. 1095; 24 R. C. L. 440.
2. See 22 Cal. Jur. 1102.

such a case being vested with the right to exercise an election as between the two remedies.

[3] ID.—REMEDIES—NOTICE OF ELECTION.—The provisions of a conditional sales contract that the title to the property shall remain in the seller until the full amount of the purchase price has been paid, and that, upon default by the purchaser to pay the purchase price as prescribed in the agreement, the seller may retake possession of the property, are inserted in the contract for the purpose of securing such payment and solely for the benefit of the vendor, which provisions he may waive and treat the sale as absolute or unconditional and enforce the agreement without any further notice to the purchaser than the institution of an action to recover upon the contract.

[4] ID.—ATTORNEY'S FEES—EVIDENCE.—In an action upon a contract for the sale of personal property, where the contract provides that if the seller shall be required to employ the services of an attorney for the collection of any unpaid balance the purchaser will pay a designated percentage of the purchase price for attorney's fees, evidence of the reasonable value of the services of the attorney for the plaintiff is properly excluded.

[5] ID. — INSTALLMENT PAYMENTS — EXTENSION OF TIME — WAIVER.— Under a written contract for the sale of personal property which provides for monthly installment payments of the purchase price, an oral agreement extending the time for payment of certain installments has the legal effect of waiving the time for the payment, as the contract requires, of the installment for each of said months, and where there is no agreement, express or otherwise, to the contrary, such waiver necessarily carries with it, as to said installments, a like waiver of the provision of the contract that time is of the essence thereof, and, consequently, of the forfeiture clause of the contract enforceable only upon default by the purchaser.

[6] ID.—FORFEITURE—WAIVER.—The seller under a conditional contract for the sale of property will not be permitted to declare a forfeiture of the rights of the purchaser under such contract for nonperformance by the latter of any of the vital terms or conditions of the writing, where such nonperformance has been with the express or clearly evinced tacit or implied consent of the seller.

[7] ID.—WAIVER OF LEGAL RIGHT—EVIDENCE—ESTOPPEL.—A waiver of a legal right may be implied as well as expressed, and a presumptive waiver may be shown by proving a clear, unequivocal, and

3.   See 24 R. C. L. 482.

6.   See 12 Cal. Jur. 641.

7.   See 27 R. C. L. 909; 3 R. C. L. Supp. 1522; 5 R. C. L. Supp. 1487.

decisive act of the party showing such a purpose or acts amounting to an estoppel.

[8] ID.—MONTHLY INSTALLMENTS—TENDER OF PAYMENT—CHECK—EVIDENCE.—In an action to recover the purchase price of personal property under a conditional sales contract, the contract providing for installment payments to be made monthly on the first day of each month or within ten days thereafter, the fact that the contract so requires the payments to be made and the further fact that a check for a certain month bore date within the time when the payment was to be made, which check was admittedly sent to the attorney for the plaintiff, although this date is not shown, constitutes some evidence that the check was tendered within due time and the burden was on the seller to show the contrary.

[9] ID.—FORFEITURES—STATUTORY CONSTRUCTION.—Forfeitures are never favored by courts of law or equity, and statutes authorizing them are to be liberally construed so as to avoid the imposition of such penalties if consistently with all the circumstances of the case it may be done.

[10] ID.—COMPLIANCE WITH CONDITIONS OF FORFEITURE.—A party to a contract authorized thereby, upon the happening of a certain contingency, to declare as forfeited the rights of the other party thereto, must bring himself clearly within the condition or conditions upon which such forfeiture may be made effective.

[11] ID.—TIME OF PAYMENT—PREMATURE SUIT.—Where a conditional sales contract provided for monthly installment payments of the purchase price, to be made on the first day of each month, or "within ten days thereafter," the time for payment included the eleventh day of the month and a suit brought on said eleventh day to recover the purchase price was premature.

---

(1) 35 Cyc., p. 654, n. 48.   (2) 35 Cyc., p, 696, n. 21, p. 706, n. 7. (3) 35 Cyc., p. 696, n. 15.   (4) 22 C. J., p. 1111, n. 41.   (5) 35 Cyc., p. 673, n. 58.   (6) 35 Cyc., p. 673, n. 59.   (7) 21 C. J., p. 1116, n. 75. (8) 22 C. J., p. 106, n. 41.   (9) 13 C. J., p. 541, n. 26.   (10) 35 Cyc., p. 702, n. 58.   (11) 38 Cyc., p. 318, n. 65.

APPEAL from a judgment of the Superior Court of Sacramento County.   Peter J. Shields, Judge.   Reversed.

The facts are stated in the opinion of the court.

O. G. Hopkins and Thos. B. Leeper for Appellants.

White, Miller, Needham & Harber for Respondent.

---

9.  See 12 Cal. Jur. 633; 23 Cal. Jur. 804.
11.  See 24 Cal. Jur. 581.

HART, J., *pro tem.*—The plaintiff brought this action to recover from defendants the total sum of $13,671 and interest, together with attorney's fee in the sum of $2,000, alleged to be due from the latter by virtue of the terms of a conditional contract of sale of certain personal property.

The cause was tried before a jury, and a directed verdict returned for the full amount prayed for in the complaint. Judgment was entered accordingly, and the defendants appeal.

The terms of the contract, in substance, and the payments thereunder made by the defendants, are correctly stated as follows in the brief of respondent:

"On June 28th, 1922, respondent as seller and appellants as purchasers entered into a written contract for the sale and purchase of certain personal property used in the conduct of a dairy business and situated at No. 2935 Franklin Boulevard in the City of Sacramento, California, a copy of which contract is annexed to the complaint and set out on pages 4 to 12 of the Clerk's Transcript. The agreed price was $20,000, payable $5,000 upon the signing of the contract and the balance in monthly installments of not less than $300 on the first day of each and every month thereafter, beginning August 1st, 1922, until the full amount had been paid, together with interest upon the deferred installments at the rate of 6 per cent per annum, payable monthly on the first day of each month. Said contract provides that the title to said personal property shall remain in the vendor until all of the payments therein provided for are made; that past due payments shall bear interest at the rate of one per cent per month; that should the vendees fail to make any of the said payments in the amounts, manner and within the time therein provided for, or within ten days thereafter, the vendor may declare the entire purchase price due and payable without notice; that in the event the vendor shall employ an attorney to collect any unpaid balances the vendees promise to pay an additional sum equal to 10 per cent of the purchase price of said personal property as and for attorney's fees and that time is of the essence of the contract. . . .

196 Cal.—44

"Thereafter, to-wit: on July 1st, 1922, appellants entered into the possession and took charge and control of the personal property described in said contract and the business theretofore conducted by respondent on the above mentioned premises and they ever since have been in the possession, management and control thereof. The uncontradicted evidence shows that the following payments, and no other, were made on the following dates, to-wit: Aug. 14, 1922, $375.00; Sept. 15, 1922, $373.50; Oct. 14, 1922, $372.00; Nov. 16, 1922, $70.50; Dec. 16, 1922, $70.50; Jan. 15, 1923, $70.50; Feb. 16, 1923, $219.75; Mar. 16, 1923, $219.75; Apr. 19, 1923, $219.10."

The facts above stated are substantially alleged in the complaint. It is further therein averred that, "on the 10th day of May, 1923, defendants were in arrears on the payments due on the principal in the sum of one thousand three hundred seventy-one and 15/100 ($1,371.15) dollars, no part of which has been paid; . . . ; that said plaintiff has been compelled to employ an attorney, and has so done, to represent him in this action and he alleges that, under the terms of said contract, there is now due and payable from said defendants the sum of two thousand dollars as attorney's fees; that plaintiff now elects to treat said contract of sale as an absolute sale."

The contract is attached to and made a part of the complaint, and therein is set forth in detail the personal property sold or agreed to be sold and transferred to defendants.

A demurrer on the general ground was interposed to the complaint and overruled, whereupon the defendants filed an answer denying specifically the allegations of the complaint and setting up a special defense based upon an alleged waiver by plaintiff of the payment of installments referred to according to the requirements of the contract.

Defendants, also, by way of a cross-complaint, pleaded a counterclaim growing out of damage alleged to have been suffered by them by reason of alleged false and fraudulent representations by plaintiff as to the extent, value, volume, and profits of the dairy business which, it is further alleged, was sold to defendants by plaintiff with the personal property constituting the equipment of said business. In this connection the cross-complaint charges that the plaintiff knowingly and fraudulently misrepresented to defendants, at

the time the sale was under negotiation, the extent and profits of said business, which alleged fraud was not discovered by defendants until after the sale was consummated and they had taken possession, control and management of said property and business; that they relied and acted upon and were induced to purchase said property and business by the representations so made to them by plaintiff, and paid to the latter for said property, in excess of the actual and reasonable value thereof, the sum of $12,500, with the result that they were and are damnified in that amount; that, "upon discovering said fraud, these defendants affirmed said contract and offered to perform the same, and do now affirm ,and offer to, and are now able, ready and willing, to carry out all its terms and conditions," etc. The plaintiff answered the cross-complaint, specifically denying all its material averments.

It appears that, between the first and tenth day of November, 1922, and when the payment of the installment for the month of November, 1922, was due but still unpaid, the defendants called on and had an interview with the plaintiff with regard to said payment and also like payments to be made for the months of December, 1922, and January, 1923. As to the nature of the conversation then had by defendants with plaintiff, the testimony of each of the defendants was substantially the same and not contradicted. In fact, the plaintiff virtually admitted it to be true. The defendant Potter testified that they first said to plaintiff that, during the negotiations culminating in the sale, he had misrepresented the value and the extent of the business and the property which were the subject òf the sale; that the business, for reasons not material to the present consideration, had not been as profitable during the period of time that it had been in their possession and under their control as he (plaintiff) had represented that it was while he· controlled and managed it; that, therefore, they would not be able to meet the payments on the principal as required by the contract for the months of November and December, 1922, and January, 1923, and that "unless some adjustment was made he (plaintiff) could take the dairy business back"; that thereupon the plaintiff stated that the defendants need not "pay the principal for three months—that we could pay the interest alone— . . . the months of November, December,

and January.'' Defendant Beskeen testified that plaintiff ''agreed to extend the payment (of the installments for the months of November, December, and January) for three months. We were to pay the interest, but did not have to pay the principal.''

Defendant Kaesar testified: ''I told Mr. Johnson (plaintiff) he had misrepresented the business—it was not paying what he said it would pay. He could take his d——n business back and his contract back. I said he misrepresented it; said he was getting $1.08 a case for the milk, which we found out was not true. Then Mr. Johnson says: 'It is a quiet time now, being it is winter time; in the spring it will probably be a whole lot better'; and I said we could not make the payment at the present time; that the business would not pay it. He said, 'Well,' he would extend the time for three months, and we would not have to make a payment on the principal, only pay the interest, and I said to run three months, November, December, and January.''

Shortly prior to the maturing of the February, 1923, installment, the defendant Potter had a second conversation with plaintiff, in which the former stated to the latter that ''we were unable, still unable, to make full monthly payment, and suggested we might make half payment. He (plaintiff) said that it would be all right and the matter mentioned was three months. . . . To make half payments for three months. There was nothing said concerning the other half payments for those months.''

On April 18, 1923, acting for and on behalf of plaintiff by the latter's request, H. H. Robinson, cashier of the Merchants' National Bank, at which plaintiff transacted his business, addressed and mailed to the defendants, Beskeen and Potter, a letter in which he notified them of their arrears in the payments required by the contract in the sum of $1,371.15 and demanded payment of said sum ''on or before ten days, or we will call upon Mr. R. G. Kaeser, cosigner on the agreement.''

Under date of May 2, 1923, the attorney then representing the plaintiff, addressed and mailed a letter to each of the three defendants demanding payment of the sum of $1,371.15, arrearages for the months of November and December, 1922, and the months of January, February, March, and April, 1923, and further notifying the defendants that, un-

less they paid said sum, together with interest which had ac-
crued thereon, on or before the tenth day of May, 1923, he
would ''commence proceedings to collect the total due under
the contract.''

A few days after the date and mailing of the letter last
referred to and prior to the tenth day of May, 1923, the
defendants met with the plaintiff and his attorney at the
latter's office. On that occasion, so the plaintiff testified,
after a general discussion relative to the installments
unpaid for the months mentioned, the defendants pro-
posed to give the plaintiff their promissory note covering
the total sum ($1,371.15) of their arrearages; that to that
proposition the plaintiff answered that he would accept such
a note ''if the bank would cash it for the full amount. I
told them,'' proceeded plaintiff, ''I wanted twenty-four hours
to find that out. I went to the Citizens Bank at Oak Park,
where they (defendants) were already doing business and
where I was doing business myself, and he could not tell me
until he consulted the Capital National Bank.'' The plain-
tiff, on the succeeding day, again called at the Citizens' Bank,
and was informed by the cashier that the bank would take
the proposed note at a discount of $171.15, or, in other
words, pay plaintiff $1,200 for the $1,371.15 note. The
plaintiff thereupon refused to accept the note for said
amount from the defendants.

A check, dated May 8, 1923, for the sum of $368.55, drawn
by the defendants Beskeen and Potter on the Citizens' Bank,
above mentioned, and in favor of the plaintiff, and covering
the installment on the principal and interest for the month
of May, 1923, was offered the plaintiff. The plaintiff re-
fused to accept the payment thus tendered, and on the
eleventh day of May, 1923, brought this action to recover on
the contract by reason of the alleged defaults of the defend-
ants in the matter of the payment of the installments as
provided thereby.

Before considering and disposing of what is conceived to
be the pivotal question on this appeal under the facts as
they are above stated and which stand in the record undis-
puted, we may, with propriety, in view of possible future
litigation growing out of the contract upon which this action
was brought, make some observations relative to certain

points discussed in the briefs of counsel representing both sides of the controversy and upon which they disagree.

[1] The contract herein involved is undoubtedly a conditional sale agreement. It provides, as will be noted, that the title to the property which is the subject thereof shall remain in the seller until the full amount of the purchase price shall have been paid. It also provides, as is further to be noted, that on default in the payment of the installments of principal and interest the seller may declare the entire purchase price, or so much thereof as then remains unpaid, due and payable, and may thereupon retake possession of the property. [2] It is settled by an unbroken line of decisions that, as to such a contract, it is optional with the seller, upon default by the purchaser in complying with any of the vital terms of the agreement, either to treat the contract as involving a conditional sale and retake possession of the property or ratify the contract as one involving an absolute sale of the property and so sue for the recovery of all moneys then payable thereunder. In other words, the seller in such case is vested with the right to exercise an election as between the two remedies suggested. (See *Parke & Lacy Co.* v. *White River L. Co.,* 101 Cal. 37, 40 [35 Pac. 442]; *Elsom* v. *Moore et al.,* 11 Cal. App. 377, 379 [105 Pac. 271]; *George J. Birkel Co.* v. *Nast,* 20 Cal. App. 651, 654 [129 Pac. 945]; *Pacific etc. Co.* v. *Haydes & Son,* 26 Cal. App. 607, 609 [147 Pac. 988]; *Holt Mfg. Co.* v. *Ewing,* 109 Cal. 353, 356 [42 Pac. 435]; *Van Allen* v. *Francis,* 123 Cal. 474, 480 [56 Pac. 339]; *Harter* v. *Delno,* 49 Cal. App. 729, 735 [194 Pac. 300, 303]; *Boas* v. *Knewing,* 175 Cal. 226 [L. R. A. 1917F, 462, 165 Pac. 690].) The text-writers lay down the same rule. (See 1 Mechem on Sales, sec. 615; Williston on Sales, sec. 579.)

Furthermore, no notice to the defaulting parties of his election to treat the sale as absolute and sue for the recovery of the purchase price is required to be given by the seller. [3] The provisions of the contract that the title to the property shall remain in the seller until the full amount of the purchase price has been paid, and that, upon default by defendants to pay the purchase price as prescribed in the agreement, the seller may retake possession of the same, were inserted in the instrument for the purpose of securing such payment and were intended solely for the benefit of the

vendor. It was, therefore, within the rights of the latter to waive those provisions and treat the sale as absolute or unconditional and so proceed with the enforcement of the terms of the agreement without any further notice to the defendants of his intention to do so than such as necessarily is imparted by the institution of an action to recover upon the contract. (See *Trinity County Bank et al.* v. *Haas,* 151 Cal. 553, 556 [91 Pac. 385]; *Hewitt* v. *Dean,* 91 Cal. 5 [27 Pac. 423]; *Sichler* v. *Look,* 93 Cal. 600 [29 Pac. 220]; *Clemens* v. *Luce,* 101 Cal. 432 [35 Pac. 1032]; *Bank of Commerce* v. *Scofield,* 126 Cal. 156 [58 Pac. 451].)

[4] The defendants, objecting to the claim of plaintiff that he was entitled to recover as and for attorney's fees the sum of $2,000 for professional services in collecting the amount due him on the contract, offered to prove the reasonable value of such services, but the court sustained plaintiff's objection to the proposed proof. The contract, as seen, provides that if the seller shall be required to employ the services of an attorney for the collection of any unpaid balance which becomes due and payable under the agreement, the purchaser "promises to pay (to the seller) . . . an additional sum equal to ten per cent of the purchase price." The theory upon which testimony as to the reasonable value of the services of the attorney was excluded was that the parties themselves had, by the contract, definitely fixed the amount to be paid for such services. We think the ruling was correct. (*Reynolds* v. *Sorosis Fruit Co.,* 133 Cal. 625 [66 Pac. 21].) As is said in that case, in effect, even if the amount agreed upon as compensation was in excess of the value of the services rendered and thus the defendants made an improvident agreement as to the amount so to be paid, they are, nevertheless, still bound by their bargain in that respect. There may be cases or circumstances arising in cases in which such fees as fixed by the contract of the parties could, and with justness, be held to be so unreasonable as to be unconscionable, and, therefore, unsustainable, but it cannot justly be so declared in this instance, in view of the amount remaining unpaid on the contract and the circumstances generally surrounding the transactions leading to this action.

We now proceed to the consideration of the points the solution of which will be decisive of the case.

The plaintiff presented his case in the court below and undertakes to sustain this appeal upon the theory that the oral arrangements entered into between the parties as to the payment of the installments for the months of November and December, 1922, and January, February, March, and April, 1923, merely involved agreements that the payment of said installments was to be postponed until the expiration of the period covered by said six months. In other words, the contention is that the intended effect of said agreements was that payment of said installments was extended for six months only, just as the payment of a promissory note might be extended by the payee or holder to some date beyond that of its maturity. Under this view of the oral agreements as shown by the testimony of the defendants, it is further argued that said agreements were void for two reasons, viz.: 1. That the alleged agreements involved an attempt to modify, vary or change a written contract, and not themselves being in writing and also being of an executory character, they are void, or legally incapable of being proved and enforced. (Sec. 1856, Code Civ. Proc.; sec. 1661, Civ. Code.) 2. That, even if the agreements were not void for the reason just stated, still neither agreement was supported by a consideration, and each for that reason was a *nudum pactum* and, therefore, void.

[5] Conceding that the testimony warrants the conclusion, as the plaintiff contends, that the agreements were that the payment of the installments for the months mentioned should be postponed to a time contemporaneous with the expiration of the period covering six months, it is, nevertheless, true, as the defendants maintain, that the legal effect of the agreements, on plaintiff's part, was to waive the payment, as the contract requires, of the installment for each of the months mentioned; that there having been no agreement, express or otherwise, to the contrary, such waiver necessarily, or in the very nature of the case, carried with it, as to the said installments, a like waiver of the provisions of the contract that time is of the essence thereof and, consequently, of the forfeiture clause of the contract enforceable only upon default by defendants to make the monthly installment payments according to the stipulations of the contract, or on their failure to comply with any of the other vital or material terms or conditions of the contract. (See

*Van Vraken* v. *C. R. & M. R. R. Co.*, 55 Iowa, 135 [5 N. W. 197, 7 N. W. 504]; see also, on the question of waiver, *Belloc* v. *Davis*, 38 Cal. 242; *Trinity County Bank et al.* v. *Haas*, 151 Cal. 553 [91 Pac. 385]; *Weinke* v. *Smith*, 179 Cal. 225 [176 Pac. 42].) **[6]** This conclusion as to the legal effect or scope of the waiver is the essential corollary of the proposition that the seller, under a conditional contract for the sale of property, will not be permitted to declare a forfeiture of the rights of the purchaser under such contract for nonperformance by the latter of any of the vital terms or conditions of the writing, where such nonperformance has been with the express or clearly evinced tacit or implied consent of the seller. As is well said in *Neppach* v. *Oregon Ry. Co.*, 46 Or. 396 [7 Ann. Cas. 1039, 80 Pac. 487], treating with a contract somewhat similar to the one here:

"It would certainly be unreasonable to hold, under such circumstances, that the defendant can now insist upon a forfeiture of the contract on account of the failure to make such payments. 'We know of no principle of law,' says Mr. Chief Justice Andrews, in *Thompson* v. *Poor*, 147 N. Y. 402 [42 N. E. 13], 'which will permit a party to a contract, who is entitled to demand the performance by the other party of some act within a specified time, and who has consented to the postponement of the performance to a time subsequent to that fixed by the contract, and where the other party has acted upon such consent, and in reliance thereon has permitted the contract time to pass without performance, to subsequently recall such consent and treat the non-performance within the original time as a breach of the contract.' The same principle is announced by the Supreme Court of Wisconsin in *Marsh* v. *Bellew*, 45 Wis. 36, 52."

In the present instance it is, of course, true that when made both the oral agreements were executory as to all the installments to which they related (save, perhaps, that for the month of November, 1922, as to which installment the first agreement was then or at the time it was made executed), and, being oral and, moreover, unsupported by consideration (*Benedict* v. *Greer-Robins Co.*, 26 Cal. App. 468 [147 Pac. 486]), neither could have been coercively enforced at the time the installment for any of the months named became payable under the contract—that is to say, the plaintiff, before acting upon the agreements, could not have

been compelled to do so. But he acted upon and carried out
the agreements as to the payments for all the months named,
as each of the installments for said months matured, by ac-
cepting from defendants as in satisfaction of the provision
as to their payment interest only for the first three months
and one-half of the installment and interest for each of the
second three months. Thus the agreements of waiver were
executed and so became perfectly valid. In other words,
the agreements were fully performed. (Civ. Code, sec.
1661.) But whether it is to be said that the agreements
became executed express agreements of waiver or that by
conduct, consisting of said agreements and subsequent acts
with reference to the payment of said installments, a waiver
arose by implication, the result would be the same. [7]
Obviously, a waiver of a legal right may be implied as well
as express, and while it is manifestly true that there can be
no presumption of such a waiver contrary to the plain or
clear intention of the party whose rights would be in-
juriously affected by reason thereof, yet it is no less true that
where the conduct or the acts of the party whose rights
would thus be affected by a waiver have been such as to
mislead the other party, to his prejudice, into the honest
belief that a waiver was intended or consented to, then such
conduct or acts will be held sufficient to work an estoppel
as against the former. In other words, a presumptive
waiver of a legal right may be shown by proving a clear,
unequivocal and decisive act of the party "showing such
a purpose or acts amounting to an estoppel." (See 27
R. C. L., p. 908 et seq., sec. 5; *First Nat. Bank of Los
Angeles* v. *Maxwell,* 123 Cal. 360 [69 Am. St. Rep. 64, 55
Pac. 980].) As before pointed out, there is no foundation
in the evidence for a rational doubt that the acts and con-
duct of the plaintiff with reference to the installments in
question were not only sufficient to raise an implied waiver
of the payment thereof as required by the contract, and,
therefore, an estoppel as against him, but also clearly show
that it was his purpose or intention to waive such payments
at the times stipulated in the instrument.

[8] It results from the foregoing considerations that the
plaintiff was without authority to declare the contract or the
rights of defendants thereunder forfeited by reason of the
nonpayment of those installments, since, as we have shown,

there was not, and, under the circumstances, there could not be, any default on the part of the defendants within the contemplation of the contract by reason of their nonpayment of the same as stipulated therein. It follows that, if the plaintiff has any legal reason for declaring the· contract or the rights of the defendants thereunder forfeited, it must be found in a failure by the defendants either to comply with some other material provision or condition of the engagement or in defaulting in the payment of an installment or installments or accrued interest for some month or months succeeding the month of April, 1923, and this, the plaintiff further contends, is what occurred. The contention is founded upon the claim that the defendants defaulted in the payment of the installment on principal and the interest thereon for the month of May, 1923. The complaint does not specifically charge such default, but tender of payment of the May installment is affirmatively alleged in the answer and is deemed to be denied by the plaintiff (Code Civ. Proc., sec. 462), and without objection evidence was received upon the question of such tender. The point will, therefore, be considered. There is, however, no merit to the point.

The contract, as seen, provides that "should the purchasers fail to make any of the said payments to said seller, in amounts, manner and within the time herein provided for (the 1st day of each month, or within ten days thereafter), . . . said seller may declare the entire purchase price due and payable, without notice," etc. As also seen, the plaintiff was tendered by the defendants a check, dated the eighth day of May, 1923, covering and as in payment of the full amount of the principal and interest payable on the first day of May, 1923, or "within ten days thereafter." (It should here be explained that, while the check in question as printed in the transcript bears date, May 18, 1923, counsel for defendants, on offering it in evidence, stated that it was dated the eighth day of May, 1923, and this statement was not disputed—in fact, it was admitted by counsel for plaintiff that the "8th day of May, 1923," was the correct date, and that the date it is made to appear to bear in the record is a mistake.) The plaintiff refused to accept the check. It does not appear that the objection of plaintiff to the acceptance of the payment so tendered was on the ground that it was in the form of a check rather than in

cash. (*California Land Security Co.* v. *Ritchie, etc.*, 40 Cal. App. 246, 254 [180 Pac. 625].) Indeed, it appears that all monthly payments, made prior to the month of November, 1922, were by check. The evidence, however, does not show the date of the tender of the check. The plaintiff testified that the check was sent to his attorney, and that he (plaintiff) saw it at some time subsequent to the day it was dated, just at what time he could not say. So there is no direct evidence that the check was tendered to plaintiff within the ten days after the first day of May, within which time his tender would be good, nor is there any evidence that it was not so tendered.

The fact that the contract requires that the monthly payments be made on the first day of each month or within ten days thereafter, and the further fact that the check was dated May 8th, constitute some evidence of a circumstantial character that the check was tendered within due time. In fact, it is to be presumed that the check was tendered to plaintiff within the time at or within which monthly installments were required by the contract to be made, there being no evidence that it was not so tendered. (Code Civ. Proc., sec. 1963, subd. 19; *Lattin* v. *Hazard*, 85 Cal. 58, 61 [24 Pac. 611].) **[9]** Again, forfeitures are never favored by courts of law or equity. Statutes authorizing them are to be liberally construed so as to avoid the imposition of such penalties if consistently with all the circumstances of the case it may be done. (12 Cal. Jur., p. 633 et. seq., and cases therein named.) **[10]** A party to a contract authorized thereby, upon the happening of a certain contingency, to declare as forfeited the rights of the other party thereto, must bring himself clearly within the condition or condi-tions upon which such forfeiture may be made effective. Hence, under the circumstances shown, upon the plaintiff rested the burden to show, if such was the fact, that the check in question was not tendered at or within the time required by the contract. This burden, as we have shown, was not sustained, nor, in fact, undertaken by plaintiff.

**[11]** There is another point, well taken by the defend-ant, which, though, goes to the right of the plaintiff in any event to maintain this action on the alleged default in the payment of the May installment, viz.: That the action was prematurely brought. The installments were due and pay-

able on the first day of each month, or "within ten days thereafter." Thus the defendants, by the terms of the contract, had all of the eleventh day of May, 1923, to pay the installment for said month. In other words, the ten days began to run after the first day of the month, or on the second day thereof, the first day of the month being excluded in the computation of the time. (Civ. Code, sec. 10; Code Civ. Proc., sec. 12.) But regardless of said sections, the language itself of the contract as to the times at which the installments are to be paid clearly and, indeed, unquestionably, in effect declares that the ten days were not to begin to run until the second day of May. The action was brought on the eleventh day of May, the last day of the ten; hence the defendants, before action brought, were not given the full ten days to which they were entitled within which to make the May payment. The bringing of the action was, therefore, premature.

There are no other points which it is conceived merit special notice herein.

For the reasons herein given, the judgment is reversed.

Richards, J., Lawlor, J., Lennon, J., Seawell, J., Houser, J., *pro tem.,* and Knight, J., *pro tem.,* concurred.